GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
NV State Bar No. 6654 (Admitted *Pro Hac Vice*)
E-mail: ggarman@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
Telephone (725) 777-3000

GARMAN TURNER GORDON LLP
TERESA M. PILATOWICZ, ESQ.
Arizona Bar No. 024447
E-mail: tpilatowicz@gtg.legal
2415 E. Camelback Rd., Suite 700
Phoenix, AZ 85016
Telephone (725) 777-3000

*Attorneys for Creditor Blue Ox Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re | Chapter 11 |
| SANTA CLARITA, LLC, | Case No.: 2:20-bk-12402-MCW |
| Debtor. | |

**BLUE OX HOLDINGS, LLC'S EMERGENCY MOTION TO APPOINT CHAPTER 11 TRUSTEE**

Blue Ox Holdings, LLC ("Blue Ox"), secured creditor, by and through its counsel, the law firm of Garman Turner Gordon LLP, hereby submits its emergency motion (the "Motion") seeking entry of an order appointing a trustee to manage the affairs of the Debtor Santa Clarita, LLC ("Debtor") and work toward closing the transaction with Prologis. This Motion is made and based upon the memorandum of points and authorities set forth herein, the declaration of Michael Stern (the "Stern Decl."), filed concurrently herewith, the papers and pleadings contained in the Court's files, judicial notice of which is respectfully requested, and any argument of counsel entertained at the hearing on this Motion.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  JURISDICTION................................................................................................... 2

III.  PERTINENT FACTS .......................................................................................... 3

   A.  The Chapter 11 Case and Blue Ox's Claim........................................................ 3

   B.  Debtor's Undisclosed Use of the Property and Income. ....................................... 3

   C.  The Insider Settlement Agreements..................................................................... 5

IV.  LEGAL ARGUMENT ........................................................................................ 7

   A. Cause Exists in this Case to Appoint a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)(1) ................................................................................................................. 7

     1.  A Chapter 11 Trustee is Required Upon a Showing of Cause. .......................... 7

     2.  "Cause" Exists to Appoint a Trustee Under Section 1104(a)(1) Because Debtor Has Grossly Mismanaged the Estate and Been Dishonest. ......................................... 8

     3.  Cause Exists to Appoint A Trustee Under Section 1104(a)(1) Because Debtor's Insiders Have an Inherent Conflict Of Interest Rendering It Impossible for Debtor to Fulfill Its Fiduciary Duties. ...................................................................................... 11

   B.  The Appointment of a Chapter 11 Trustee Is Warranted Pursuant to Section 1104(a)(2) Because It Is in the Best Interest of the Estate. .......................................... 12

V.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Commodity Futures Trading Comm'n v. Weintraub*,
471 U.S. 343 (1985) .................................................................................. 13

*In re Bonded Mailings*,
20 B.R. 781 (Bankr. E.D.N.Y. 1982) ......................................................... 8

*In re Bowman*,
181 B.R. 836 (Bankr. D.Md. 1995) ........................................................... 11

*In re Eurospark, Indus., Inc.*,
424 B.R. 621 (Bankr. E.D.N.Y. 2010) ..................................................... 11

*In re Hoyle*,
No. 10-01484-TLM, 2013 WL 210254 (Bankr. D. Idaho Jan. 17, 2013) ...................... 8

*In re Intercat, Inc.*,
247 B.R. 911 (Bankr. S.D. Ga. 2000) ......................................................... 8

*In re Ionshere Clubs, Inc.*,
113 B.R. 164 (Bankr. S.D.N.Y. 1990) ...................................................... 13

*In re Marvel Enter. Group, Inc.*,
140 F.3d 463 (3d Cir. 1998) ............................................................... 8, 13

*In re Nautilus of New Mexico, Inc.*,
83 B.R. 784 (Bankr. D. N.M. 1988) ......................................................... 11

*In re Oklahoma Ref. Co.*,
838 F.2d 1133 (10th Cir. 1988) ................................................................. 8

*In re Pasadena Adult Residential Care, Inc.*,
2015 WL 6443216 (Bankr. C.D. Cal. Oct. 23, 2015) ............................... 7, 12

*In re Plaza de Retiro, Inc.*,
417 B.R. 632 (Bankr. D.N.M. 2009) .......................................................... 9

*In re SunCruz Casinos, LLC*,
298 B.R. 821 (Bankr. S.D. Fla. 2003) ........................................... 7, 8, 11, 13

iii

*In re V. Savino Oil and Heating Co., Inc.*,
   99 B.R. 518 (Bankr. E.D.N.Y. 1989) ........................................................................ 9

*Lopez-Munoz*,
   553 B.R. 179 (1st Cir. B.A.P. 2016) ........................................................................ 13

*Matter of Cajun Elec. Power Co-op., Inc.*,
   74 F.3d 599 (5th Cir. 1996) .............................................................................. 8, 11

*In re Sundale, Ltd.*,
   400 B.R.80 (Bankr. S.D. Fla. 2009) ........................................................................ 13

*Thompson v. Margen (In re McConville)*,
   110 F.3d 47 (9th Cir. 1997) ................................................................................. 11

*Tradex Corp. v. Morse*,
   339 B.R. 823 (D. Mass. 2006) ................................................................................. 8

*In re Wallace*,
   09-20496-TLM, 2010 WL 378351, at *4–5 (Bank. D. Idaho Jan. 26, 2010). ................ 8

*Wolf v. Weinstein*,
   372 U.S. 633 (1963) ........................................................................................... 13

**Statutes**

11 U.S.C. § 363 .................................................................................................. 5, 13

11 U.S.C. § 363(b) ................................................................................................. 4, 9

11 U.S.C. § 1104(a) ............................................................................................. 2, 7, 8

11 U.S.C. § 1104(a)(1) and (a)(2) ................................................................. 2, 7, 8, 11, 12, 13

28 U.S.C. § 157(b)(2)(A) ........................................................................................... 2

28 U.S.C. §§ 157 and 1334 ........................................................................................ 2

iv

# I. INTRODUCTION

Without disclosure, or recognizing income on its monthly operating reports, Debtor has been permitting hundreds and potentially over a thousand individuals to engage in commercial film and television production activity on the Property, a large parcel of rugged California land that is covered in dry brush and abandoned buildings. This filming includes stunt work and activities that could cause a wildfire. Debtor has represented that it does not maintain any general liability insurance to protect the estate from potential liability claims, and the limited insurance purchased by at least certain of the permittees potentially could be inadequate. Debtor has also failed to disclose where the proceeds from such filming activities have gone; however, it is clear the payments did not go to the Debtor, almost certainly constituting a theft of estate assets.

In addition to these extremely risky, unauthorized, and apparently deceitful decisions by Debtor, there is further evidence that current management (insiders who also hold equity interests in Debtor) is using estate assets for the satisfaction of their individual obligations and liabilities in breach of the fiduciary responsibilities of a debtor-in-possession. Specifically, in recent weeks, Debtor has filed motions seeking approval of three settlements that propose millions of dollars of payments to creditors. However, the requests to approve the settlements do not even attempt to explain the purported "disputes" with the Debtor that are to be settled. Instead, creditors are required to scour the agreements and other available information to reveal that the "disputes" that are being settled with assets of the estate are, at least in part, actually obligations of Debtor's insiders (and their entities). In other words, Debtor's insiders have asked this Court to use Debtor's funds to resolve claims against them and their entities without disclosing their own liability for the resolved claims. Moreover, the settlements reveal even more potential undisclosed deals that provide promises of ownership interests in Debtor to other parties who are affiliated with Debtor's insiders.

Blue Ox has lost all confidence in Debtor's management as these insiders have demonstrated that they cannot be trusted. They have failed to obtain court approval for

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

non-ordinary course use of the Property, placed the Debtor's sole asset at significant risk, and allowed uninsured high-risk activity that creates potentially large post-petition liability claims which could arise from fires or other damage. The insiders have failed to disclose income that is generated from the lease of the Property or from the filming activities on the Property and have sworn under penalty of perjury that Debtor has no unexpired leases or other sources of income. Debtor's sole reported bank account shows no activity and its June 2021 MOR reports $0 gross income since the Petition Date. Debtor's principals have failed to manage their personal conflicts of interests and, when required to disclose the same, utterly failed to meet their burden. Blue Ox is not alone in its concerns over the insiders managing the Debtor. Each of the Debtor's principals currently has their professional license under suspension (Bart Shea's company, Shea Connelly Development, LLC ("S-C"), currently has its contractors license suspended and David Lunn's law license will be suspended beginning on September 1). As a result, a trustee must be appointed under both 11 U.S.C. § 1104(a)(1) for "cause" and also under 11 U.S.C. § 1104(a)(2) because the appointment is in the best interest of creditors of the estate.

Blue Ox remains supportive of a sale to Prologis (subject to the requested protections placed on the record) which can easily be advanced by an independent Chapter 11 Trustee.[1] This estate's sole asset is a potential realization from the sale of non-operating land (save and except for the filming); appointment of a Chapter 11 trustee is necessary to move this case to a conclusion while protecting Debtor's assets and its creditors from risk or diminution caused by the inappropriate conduct of the Debtor's insiders.

## II. JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). The basis for the relief sought is Section 1104 and Bankruptcy Rule 2007.1.

---

[1] The appointment of a trustee does not give rise to a termination right under the PSA. The representation that Seller is a Debtor in Possession (7.1(k)) requires waiver or amendment already as "Seller" includes Bermite Recovery which is not a debtor at all.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

### III. PERTINENT FACTS

#### A. The Chapter 11 Case and Blue Ox's Claim.

1. On November 12, 2020 (the "Petition Date"), Debtor filed a chapter 11 petition thereby commencing the above-referenced case. *See* ECF No. 1. Debtor contends that it is a single asset real estate debtor ("SARE") owning real property located at 22116 West Soledad Canyon Road., Santa Clarita, CA 91350 (the "Property") with no employees, no operations, and no income. See ECF Nos. 1, 39, 40.

2. Debtor is wholly owned by Remediation Financial, Inc., ("RFI") which is wholly owned by Shea, Lunn, and/or their related entities, and/or Glask Development, Inc. ("Glask").[2]

3. Blue Ox is a secured creditor through its pre-Petition Date liens on the Property totaling no less than $222,808,034.38 as of the Petition Date. On February 3, 2021, Blue Ox filed a proof of claim evidencing its various claims secured by various liens and deeds of trust. *See* Claims Register, Claim No. 4-2.

4. On February 12, 2021, Debtor filed its proposed plan (the "Plan"), which proposes a contingent sale of the Property, along with non-debtor property also subject to Blue Ox's liens, to Prologis more than four months after the confirmation hearing. Blue Ox generally supports the sale to Prologis so long as Blue Ox is provided with the protections to which it is entitled under relevant law. However, Blue Ox maintains that the Plan in its current form does not provide those protections and is unconfirmable. *See* ECF Nos. 207, 226 (collectively, the "Confirmation Objection").

#### B. Debtor's Undisclosed Use of the Property and Income.

5. In recent weeks, Blue Ox became aware that Debtor is permitting film and

---

[2] Debtor's principals have testified and presented documents with inconsistent explanations as to Debtor's ultimate owners. *See* Claim No. 1 (claiming Gracie Gold, LLC holds 50% interest in RFI); Stern Decl. ¶ 14, Ex. "16" (Dec. Term Sheet contending Glask wholly owns RFI); Stern Decl. ¶ 19, Ex. "21" (Myla testifying RFI interest sold to Glask); Stern Decl. ¶ 20; Ex. "22" (Lunn testimony that Shea and Lunn individually own RFI).

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

3

Case 2:20-bk-12402-MCW    Doc 229    Filed 08/20/21    Entered 08/20/21 15:19:01    Desc
Main Document    Page 7 of 23

television location production to occur on the Property. Concerned that its collateral may be placed at risk, Blue Ox made a public records request (the "Request") to the City of Santa Clarita (the "City"). *See* Stern Decl. ¶ 4.

6. In response to the Request, the City produced eleven permits (the "Permits") that had been granted for filming on the Property since the Petition Date. The Permits provide for a total of eighteen filming preparation days, twenty-two filming shoot days, and fifteen strike days,[3] for a total of fifty-five days that the Property has been permitted for use by third-parties for filming. *See* Stern Decl. ¶ 5; Exs. "1" – "11."

7. In total, the Permits provide for up to more than 1,000 people and more than 900 vehicles to be on the Property, and the following special effects and props to be used: propane and gasoline fires; actors brandishing weapons; actors smoking; stunt actors being suspended from underside of bridge; simulated chase scene; squib hits; explosions; flash bang; flame bars; dust hits; camp fire; full load automatic gunfire; a gatling gun; aftermath of car bombing; compressed air to simulate window blowing out; fire in barrel; flash grenades; and smoke and spark. *See id.*

8. Debtor has never disclosed that filming has been occurring on the Property, let along sought court approval for the extraordinary use of the Property pursuant to 11 U.S.C. § 363(b), which is required for the filming activity. *See* Stern Decl. ¶ 6.

9. Since receiving the response to the Request, Blue Ox has obtained a copy of one contract (the "Contract") for filming on the Property. *See* Stern Decl. ¶ 7; Ex. "12." The Contract, dated on the Petition Date, reflects that RFI Operating Corp. ("RFI Operating") is identified as the "Controlling Lessor" for the Property. Myla Bobrow ("Myla"), the former owner of RFI, is identified as the President. Debtor is identified as an indemnified party. Myla's relationship with the Debtor's affiliates is ongoing as she was purportedly paid in part through interest in S-C and its other assets. *See* Stern Decl. ¶ 8.

---

[3] A filming strike day is a day at a filming location during which no filming or photography occurs, but individuals are engaged in removing sets, etc.

**GARMAN TURNER GORDON**
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

4

Case 2:20-bk-12402-MCW    Doc 229    Filed 08/20/21    Entered 08/20/21 15:19:01    Desc
Main Document      Page 8 of 23

10. Upon information and belief, the fees associated with filming are collected by Deven Chierighino of Valencia Locations, who confirmed to Blue Ox that filming has been occuring. *See* Stern Dec. ¶ 9. Upon information and belief, Lunn (who previously served as Myla's attorney) is aware of the filming process. *See* Stern Dec. ¶ 10.

11. Blue Ox holds Assignment of Rents under the KFI Deed of Trust and PBL Deed of Trust and has never permitted its cash collateral to be used by Debtor, or any other party, as required by 11 U.S.C. § 363. *See* Stern Dec. ¶ 11; Exs. "13" and "14."

**C.    The Insider Settlement Agreements.**

12. Debtor has filed motions for approval of three settlement agreements in this case: a settlement agreement by and between Debtor, Shea, and Lunn, and KB-2011, LLLP ("KB") (the "KB Agreement") [ECF No. 215]; a settlement agreement by and between Debtor and Hargis + Associates, Inc. (the "Hargis Agreement")[ECF No. 220]; and a settlement agreement by and between Debtor, Shea, Lunn, S-C, Bermite, RFI, and Myla, and Porta Bella Lender, LLC, Robert and Allene Turpin, Mesch Clark Rothschild, P.C., and Frederick J. Petersen (collectively, the "State Court Defendants") (the "PBL Agreement"). [ECF No. 222] (collectively, the "Settlement Agreements").[4]

13. All of the Settlement Agreements provide resolutions of claims between not only the Debtor and a third-party, but also between Debtor's insiders and their affiliated entities and a third-party, while failing to disclose the relevant facts related thereto and apparently without any contribution from those parties.

14. For example, Debtor proposes to settle the claim of KB for more than full payment of its claims purportedly to resolve the KB proof of claim (the "KB Claim"). However, pursuant to documents KB provided in related litigation prior to the Petition Date, at least as of May 28, 2020, Debtor and its insiders entered into a "Binding Term

---

[4] Blue Ox objects to approval of the Settlement Agreements as set forth in the omnibus objection filed concurrently herewith.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

Sheet" (the "<u>May Term Sheet</u>"),[5] which replaced a prior December 2019 binding term sheet (the "<u>Dec. Term Sheet</u>"),[6] which promised KB, in exchange for the loans provided: (1) a 10% "membership interest in the equitable owner of [Debtor] and Bermite which is currently [Glask]"; (2) a $10,000 per month consulting fee from S-C, (3) a 15% membership interest in all current Shea and S-C Arizona projects, and (4) $5,000,000 cash (the "<u>$5 Million Payment</u>"). *See* Stern Decl. ¶ 12; Ex. "15." Neither of these term sheets were ever disclosed in this bankruptcy case despite promising a secured creditor ownership in the debtor. The KB Agreement would release all claims against Debtor's insiders, Shea and Lunn, who are personally liable on at least a portion of the KB Claim, without any apparent contribution or payment from them. It is not even clear whether any of the loans from KB even made it to Debtor as Bobrow testified that the proceeds were used for operating expenses for S-C and Lunn testified that Debtor did not have a pre-petition bank account. *See* Stern Decl. ¶17, 20. Exs. "19" and "22."

15. Moreover, as set forth in the KB Agreement, apparently there is a more recent Binding Term Sheet dated November 3, 2020 (the "<u>Nov. Term Sheet</u>"), *executed just nine days before the Petition Date*, that has not been disclosed. While the KB Agreement release provides for a carve-out for the obligations under the Nov. Term Sheet, the terms of the Nov. Term Sheet remain unknown because the Nov. Term Sheet has never been

---

[5] Shea, on behalf of himself and "his related entities" executed a Binding Term Sheet on May 28, 2020, which replaced a December 19, 2019 Binding Term Sheet.

[6] The KB Settlement also highlights the affiliation of David Harbour ("<u>Harbour</u>") with Debtor. Harbour is currently under indictment in the Arizona Federal District Court for twenty-six counts of wire fraud, mail fraud, money laundering, tax evasion, false statements, and obstruction. S*ee* Case No. CR-19-0898-PHX-DLR. Harbour also has settled SEC charges of misappropriation of investor funds and related malfeasance by agreeing to pay a total of $3,167,072, consisting of disgorgement of $1,535,000 plus prejudgment interest of $97,072, and a penalty of $1,535,000. Harbour also agreed to be enjoined from future securities law violations. https://www.sec.gov/litigation/litreleases/2018/lr24220.htm. The Dec. Term Sheet provided that the $5 Million Payment would be paid by a promissory note from Harbour's wife's trust, which would also hold a membership in Glask, and would be guaranteed by S-C . Despite that Lunn previously sued Harbour on behalf of a client for racketeering and   fraud, Shea now employs Harbour through S-C, and Harbour is believed to be actively involved with the Property. *See* Stern Decl. ¶¶ 14-16; Exs. "16" – "18."

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

6

Case 2:20-bk-12402-MCW    Doc 229    Filed 08/20/21    Entered 08/20/21 15:19:01    Desc
Main Document    Page 10 of 23

otherwise disclosed. Upon information and belief, in the year prior to the Petition Date, KB served as Shea and Lunn's principal source of funding. Shea has been funding case expenses directly with no disclosure as to the source of funds. *See* Stern Decl. ¶ 13.

16.     Similarly, the Hargis Agreement seeks to resolve a claim against both Debtor and RFI, without RFI contributing any proceeds to the settlement.

17.     Finally, the PBL Agreement also raises concerns regarding conflicts of interest in its negotiation and the potential undisclosed use of estate assets for the benefit of the insiders. The PBL Agreement is a resolution not only of Debtor's claims, but also those against Shea, Lunn, S-C, Bermite, RFI, and Myla, without any stated contribution of those non-debtor insider parties. The failure of the non-Debtor third parties to contribute any funds to the PBL Settlement is especially concerning because the Arizona Court issued a fee award against S-C (but not Debtor) in the total amount of $139,009.20 (the "S-C Fee Award"),which is resolved through the PBL Agreement using Debtor's funds.

## IV.     LEGAL ARGUMENT

### A.     Cause Exists in this Case to Appoint a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)(1)

#### 1.     A Chapter 11 Trustee is Required Upon a Showing of Cause.

Section 1104 authorizes the Court to remove a debtor from possession and appoint a trustee for "cause," " *including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management* either before or after the commencement of the case." 11 U.S.C. § 1104(a)(emphasis added). Courts that have applied Section 1104(a)(1) have concluded that the list of examples of "cause" is non-exhaustive. *See, e.g., In re Pasadena Adult Residential Care, Inc.,* 2015 WL 6443216, at *14 (Bankr. C.D.Cal. Oct. 23, 2015); *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D.Fla. 2003) (same). Parties seeking the appointment of a trustee pursuant to Section 1104(a)(1) bear the burden of proving by a preponderance of the evidence that the appointment of a trustee is appropriate. *See Tradex Corp. v. Morse*, 339 B.R. 823, 830-32 (D. Mass. 2006).

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

7

Case 2:20-bk-12402-MCW     Doc 229     Filed 08/20/21     Entered 08/20/21 15:19:01     Desc
Main Document     Page 11 of 23

Courts in several jurisdictions have identified the following factors as relevant in determining whether cause exists to appoint a Chapter 11 trustee: (1) materiality of misconduct; (2) evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers; (3) existence of prepetition voidable preferences or fraudulent transfers; (4) conflicts of interest on the part of management interfering with its ability to fulfill its fiduciary duties to the debtor; and (5) Self-dealing by management or waste or squandering of corporate assets. *SunCruz Casinos*, 298 B.R. at 830 (*citing In re Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000). Establishing just one of the factors listed above can constitute sufficient cause to appoint a Chapter 11 trustee. *See Matter of Cajun Elec. Power Co-op., Inc.,*74 F.3d 599 (5th Cir. 1996). Once the party seeking to appoint a Chapter 11 trustee meets the burden that "cause" exists under Section 1104(a), or if a debtor's ability to fairly and adequately perform its duties is called into question by conduct or the existence of conflicts of interest, a Chapter 11 trustee "must" be appointed. *See In re Marvel Enter. Group, Inc*., 140 F.3d 463, 472 (3d Cir. 1998) *see Tradex* , 339, B.R. at 826; *In re Oklahoma Ref. Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) ("Once the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee.") (*citing In re Bonded Mailings*, 20 B.R. 781, 786 (Bankr. E.D.N.Y. 1982)).

### 2. "Cause" Exists to Appoint a Trustee Under Section 1104(a)(1) Because Debtor Has Grossly Mismanaged the Estate and Been Dishonest.

Courts have previously found that a debtor in possession grossly mismanages the bankruptcy estate by failing to follow the Code and get the Court's approval for various post-petition conduct. *See, e.g., Wallace,* No. 09-20496-TLM, 2010 WL 378351, at *4–5 (Bank. D. Idaho Jan. 26, 2010). *In re Hoyle*, No. 10-01484-TLM, 2013 WL 210254, at *11 (Bankr. D. Idaho Jan. 17, 2013). Furthermore, "one of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization." *In re V. Savino Oil and Heating Co., Inc*., 99 B.R. 518, 526 (Bankr.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

1  E.D.N.Y. 1989). Consequently, when "the Debtor fails to disclose material and relevant

2  information to the Court and creditors, a Chapter 11 trustee is required." *Id.* Thus,

3  bankruptcy courts have relied on perceived dishonesty or the withholding of information

4  as a key element in determining cause. *See, e.g., In re Plaza de Retiro, Inc.*, 417 B.R. 632,

5  641 (Bankr. D.N.M. 2009); *In re V. Savino Oil and Heating Co.*, 99 B.R. at 526.

6        Here, Debtor has repeatedly advised this Court that it is a SARE with no operations.

7  However, the Permits and Contract obtained by Blue Ox confirm that Debtor has been

8  operating and generating income, Debtor just has not disclosed either the operations or the

9  income to this Court.  Specifically, as made clear from the Contract, either Debtor is leasing

10  its real property to RFI Operating (which identifies itself as a "Controlling Lessor")[7] and

11  not receiving (or diverting) the lease or the rental income, or Debtor is receiving (or

12  diverting) proceeds obtained from the filming on the Property. Debtor has never sought, or

13  obtained approval, under 11 U.S.C. § 363(b) to use the Property in this manner and Debtor

14  has never disclosed the receipt of any revenue on its monthly operating reports.

15        Even more concerning, the undisclosed filming on the Property includes dangerous

16  activities which may result in liability to the Debtor, or worse.  The filming  includes use

17  of various flammable materials, dangerous stunt activities, and gunfire. Moreover, the

18  Permits provide for more than 900 vehicles and 1,000 people to be on the Property.

19  However, Debtor acknowledges that while it has casualty/property insurance (for which

20  the amount of coverage is unclear), Debtor *does not have general liability insurance.  See*

21  ECF No. 194.  Thus, it is unclear the extent of coverage for injury or death that may occur

22  on the Property, and no coverage for potential damage that may occur on neighboring

23  properties, including the risk of fires that could occur from the use of the Property.[8]  With

24

---

25  [7] Even more confusing, Myla executed the contract and is identified as RFI Operating's President
26  despite Myla previously having testified that she had no involvement with the Property following
     her sale of the equity interests in RFI.  *See* Stern Decl. ¶ 18; Ex. "20."

27  [8] *See, e.g., Officials Warn of Dry Season, Remind Residents of Ready! Set! Go!*, THE SIGNAL, July
     21, 2021, https://signalscv.com/2021/07/officials-warn-of-dry-season-remind-residents-of-ready-
28  set-go/.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

Case 2:20-bk-12402-MCW    Doc 229    Filed 08/20/21    Entered 08/20/21 15:19:01    Desc
Main Document    Page 13 of 23

the Property on the verge of a potential multi-hundred million dollar sale, even if compensated, this behavior without suitable insurance is reckless and potentially disastrous for the Debtor. This is a failure of Debtor's management to properly manage the estate and places the estate at risk for substantial administrative claims.

As a result of this dishonesty, Blue Ox also closely examined the schedules and statements signed under penalty of perjury by Lunn, an attorney and principal, to see what other information has been withheld from this Court and creditors. Based on the records available to it, the examples are plentiful:

- The May Binding Term Sheet (or new Nov. Binding Term Sheet), which provided for KB to obtain a 10% ownership interest in Debtor's parent company, is not disclosed anywhere.

- Bermite is the only co-debtor identified on debts, despite Lunn, Shea, Myla, and S-C's obligations on, among other debts, those to KB, the State Court Defendants, and Foley Bezek. *See* ECF No. 40, Schedule H.

- Debtor failed to identify the transfers to KB-2011, which occurred within one year prior to the Petition Date and for the benefit of insiders and their entities (i.e., the deed of trust on Debtor's Property for obligations that are jointly due and owning by the insiders), including its liens and the Nov. Binding Term Sheet, despite KB's status as a potential insider. *See* ECF No. 39, p. 2.

- Debtor initially declined to provide a valuation, which the Court urged Debtor to correct.[9] Debtor swore to the Court that its only valuation was outdated as it was from March 2020, but discovery revealed Debtor was in possession of a more recent, undisclosed appraisal obtained by Debtor on June 17, 2020. *See* Stern Decl., ¶ 21.

- Neither an agreement with RFI Operating nor agreements for filming are disclosed.

As a result of Debtor's gross mismanagement and dishonesty, a Chapter 11 trustee must be appointed. Debtor's plan of reorganization does not provide for an escrow or collateral account for sale proceeds, nor does the contract or the plan currently provide for an allocation between the Debtor and non-Debtor affiliate sellers. With the potential for $286 million in estate assets subject to wire instructions provided to the title company by

---

[9] *See* Minute Entry, December 15, 2020 Chapter 11 Statue Conference, ECF No. 53.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

1    Lunn and Shea, the risk to the Estate and the creditors is untenable.[10]

2    **3.    Cause Exists to Appoint a Trustee Under Section 1104(a)(1) Because**
         **Debtor's Insiders Have an Inherent Conflict of Interest Rendering It**
3        **Impossible for Debtor to Fulfill Its Fiduciary Duties.**

4        By virtue of Section 1107(a), a Chapter 11 debtor in possession stands in the shoes

5    of a trustee and is a fiduciary for the estate and its creditors. *See Thompson v. Margen (In*

6    *re McConville),* 110 F.3d 47, 50 (9th Cir. 1997) (stating that Chapter 11 debtors in

7    possession "were fiduciaries of their own estate owing a duty of care and loyalty to the

8    estate's creditors"), *cert. denied*, 522 U.S. 966 (1997). A debtor-in-possession's fiduciary

9    obligations "include a duty of care to protect the assets, a duty of loyalty and a duty of

10   impartiality." *In re Eurospark, Indus., Inc.,* 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010)

11   (citations omitted); *In re Bowman*, 181 B.R. 836, 843 (Bankr. D.Md. 1995). Indeed, "[t]o

12   fulfill its duty of loyalty, a debtor-in-possession must 'avoid self-dealing, conflicts of

13   interest and the appearance of impropriety.'" *Id.* (citations omitted). "When a debtor in

14   possession is incapable of performing these duties a trustee is properly appointed." *In re*

15   *Nautilus of New Mexico, Inc.,* 83 B.R. 784, 789 (Bankr. D. N.M. 1988). The insiders

16   currently managing Debtor are not able to act as fiduciaries of the estate, which they have

17   proven through their misuse of estate property and diversion of funds, as well as the

18   motions to approve the various insider Settlement Agreements. Conflicts of interest alone

19   are a sufficient basis to appoint a trustee even when the Court does not find any fraud,

20   dishonesty, incompetence, or gross mismanagement, it may still appoint a trustee where

21   there exist inherent conflicts of interest. *See In re Cajun Electric Power Cooperative,* 74

22   F.3d 599; *SunCruz Casinos*, 298 B.R. at 830-32.

23       Here, cause exists to appoint a Chapter 11 trustee because the overlapping liabilities

24   of Debtor and Debtor's insiders to third parties compromise management's ability to fulfill

25   its fiduciary obligations to the estate and its creditors. Shea is paying the legal bills of the

27   _____

     [10] Lunn's bar suspension is for knowingly failing to comply with a court order to schedule a
28   settlement conference, while Lunn was already on probation, while representing S-C.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

Debtor. Equity interests in Shea's entities have been pledged to KB as evidenced by the May Term Sheet. Shea is personally liable on a portion of the KB Claim. Shea's entity is liable for the S-C Fee Award that Debtor seeks to settle through the PBL Agreement. Lunn represented S-C and Debtor in that matter. Similarly, Lunn is personally obligated on a portion of the KB Claims. Lunn is liable for debt owed to the Arizona State Court Defendants. RFI, S-C, and Bermite are jointly liable on a claim by filed by Foley Bezek for nearly $1 million in unpaid legal fees and up to $25 million in "success" fees.

Now, Debtor has presented this Court with Settlement Agreements that, while proposing to settle claims against Debtor, are so devoid of information regarding the underlying claims, that they intentionally serve to conceal that a true purpose is to resolve the claims against insiders (being Debtor's principals and their affiliates) with Debtor's assets. By way of another example, Shea's entity, Gracie Gold, LLC ("GG"), received a $300,000 loan from Steven Miers, secured by the interest in GG. This debt, *owed by GG and not Debtor*, is identified as one of the only undisputed claims in this estate (despite not being a debt owed by Debtor). *See* Claim No. 1; ECF Nos. 40, P. 18; 164.[11] The insiders have proven that they are brazen in repeatedly seeking to use Debtor's assets to resolve their own issues and liabilities, all while withholding the relevant information from this Court. Therefore, a Chapter 11 trustee must be appointed.

**B.** **The Appointment of a Chapter 11 Trustee Is Warranted Pursuant to Section 1104(a)(2) Because it Is in the Best Interest of the Estate.**

The Court is also required to appoint a trustee whether such appointment is in the best interest of creditors, equity security holders, and other interests of the estate, 11 U.S.C. § 1104(a)(2). As to whether a Chapter 11 trustee should be appointed under Section 1104(a)(2), the courts look to the totality of the circumstances. *See Pasadena Adult*, 2015 WL 6443216, at *15. Factors that courts have used to determine whether a trustee should be appointed under Section 1104(a)(2) include: (1) the trustworthiness of the debtor; (2)

---

[11] Claim disputed as to calculation and security, but not allowance.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

the debtor in possession's past and present performance and prospects for rehabilitation; (3) the confidence—or lack thereof—of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment *In re Sundale, Ltd.* 400 B.R. 890, 901 (Bankr. S.D.Fla. 2009); *see also In re Ionshere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990).

"A court's review under § 1104(a)(2) is materially different from that under the first subsection of 1104(a). Its standards for the appointment of a trustee are more flexible than those under subsection (a)(1)." *Lopez-Munoz*, 553 B.R. 179, 195 (1st Cir. B.A.P. 2016), *aff'd sub nom. In re Lopez-Munoz*, 866 F.3d 487 (1st Cir. 2017). "Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists." *Sundale*, 400 B.R. at 901. Rather, Section 1104(a)(2) reflects "the practical reality that a trustee is needed." See id. Section 1104(a)(2) may "entail the exercise of a spectrum of discretionary powers and equitable considerations, including a cost-benefit analysis, to determine whether the appointment of a reorganization trustee would be in the interests of creditors, equity security holders and other interests of the estate." *SunCruz Casinos*, 298 B.R. at 829. Courts will leave a debtor in possession in place only where current management "can be depended upon to carry out the fiduciary responsibilities of a trustee." *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (quoting *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)). Where management is incapable of performing these duties, or where the confidence of creditors evaporates, a Chapter 11 trustee must be appointed. *See In re Marvel Entm't Group, Inc*. 140 F.3d at 473.

Here, a review of the four *Sundale* factors demonstrates that the appointment of a Chapter 11 trustee is in the best interest of the estate. The first *Sundale* factor, trustworthiness of the debtor, weighs in favor of appointing a trustee. Debtor has been renting estate property for filming and placing itself and the Property at significant risk, all while failing to seek the Court's authorization or otherwise provide any disclosure and potentially improperly diverting the proceeds. In doing so, Debtor has violated Section 363

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

of the Bankruptcy Code and failed to fulfill its statutory requirements. These violative actions lead to significant concern regarding the true operations and future control of Debtor, and whether Debtor's management can be trusted to protect and preserve the estate pending confirmation of the Plan.

The second *Sundale* factor, the debtor in possession's past and present performance and prospects for the debtor's rehabilitation, also support a trustee. Absent the undisclosed filming, Debtor does not have any ongoing operations. It currently exists only to complete a sale of the Property to Prologis through a fully negotiated contract. An independent fiduciary can complete this task, and can complete it with the confidence of Debtor's creditors and full disclosure to the Court. As it stands now, the Plan proposed by Debt is unconfirmable. Thus, there is no prospect for future performance. However, an independent fiduciary who will appropriately negotiate with Blue Ox (a task that for inexplicable reasons, Debtor fails to do),[12] the sale can move forward and all creditors can benefit.

The third *Sundale* factor, the confidence—or lack thereof—of the business community and of creditors in present management, also weigh in favor of appointing a Chapter 11 trustee. Debtor has made little progress in resolving the dispute with Blue Ox, its largest creditor. Debtor has instead chosen to blindly pursue its baseless adversary proceedings, which have already been rejected by other courts, and waste this Court's time on an unconfirmable Plan. Moreover, Debtor is currently embroiled in disputes with the City, whose approvals are required should these proceedings move forward. Finally, the ability of Shea and Lunn to carry out any transactions with any level of confidence is called into even further question as (1) Shea's contractor license was recently revoked; (2) Lunn was recently disciplined by the Arizona State Bar for pursuing frivolous litigation on behalf

---

[12] As stated at the initial confirmation hearing, Blue Ox has made two proposals for resolutions to Debtor, a global resolution months ago and a more recent narrow proposal prior to the August 3rd hearing that would permit the sale to proceed while continuing the claim dispute for resolution before this Court. Despite representations to the contrary at the hearing, Debtor still has failed to respond to these proposals or engage in any settlement discussions whatsoever.

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

of Shea's entities; and (3) Shea and Lunn and/or their affiliates have involved Harbour, currently subject of a 26-count indictment and previously having settled serious charges with the SEC for millions of dollars of restitution and penalties, in the Debtor's affairs. *See* Stern Decl. ¶¶ 15, 22, 23; Exs. " 17" and "23" – "26." Upon information and belief, neither Shea nor Lunn have any particular expertise in California real estate development nor has either executed a transaction anywhere near this scale. *See* Stern Decl. ¶24. As a result of Debtor's conduct to date, creditors have sufficient cause and reason to lack confidence in Debtor's ability to fulfill its fiduciary duties to the estate.

The fourth *Sundale* factor, the benefits derived by the appointment of a trustee, balanced against the cost of the appointment, also weighs heavily in favor of appointing a Chapter 11 trustee. Here, as Blue Ox has repeatedly made clear, Blue Ox is generally supportive of a sale of the Property to Prologis so long as the sale provides Blue Ox with the protection to which it is entitled under federal law. Blue Ox is aware that junior creditors want the sale to proceed, as well. Debtor and its insiders continue to place the sale at risk by choosing to fight with all relevant parties (i.e., Blue Ox and the City) instead of bringing the necessary parties to the table. Debtor and its insiders continue to place the sale at risk by seeking to saddle Debtor with its insider settlement deals and permitting potentially dangerous activities to take place on the Property. Blue Ox is willing to permit the sale to move forward with its consent if a party is willing to have discussions with Blue Ox, and resolve all issues that are resolvable. An independent fiduciary can make this happen. An independent fiduciary can also assure all creditors that, if the sale to Prologis closes, that the proceeds from the sale will be protected. This is a better solution for all parties. Thus, the interests of the creditors is for a trustee to step in and proceed with completing the sale to Prologis such that all gross mismanagement, dishonesty, insider deals, conflicts of interest, and risks to the Property and proceeds can be removed from the process and these SARE proceedings can finally come to a close

## V. CONCLUSION

Based upon the foregoing, Blue Ox respectfully requests that the Court enter an

GARMAN TURNER GORDON
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

order granting the motion to appoint a Chapter 11 Trustee, and for such other further and different relief as is just and appropriate under the circumstances.

DATED this the 20th day of August, 2021.

GARMAN TURNER GORDON LLP

By: _/s/ Teresa M. Pilatowicz_
TERESA M. PILATOWICZ, ESQ.
2415 E. Camelback Rd., Suite 700
Phoenix, AZ 85016

GREGORY E. GARMAN (admitted *pro hac vice*)
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Creditor Blue Ox Holdings, LLC*

**GARMAN TURNER GORDON**
2415 E. Camelback Road
Suite 700
Phoenix, AZ 85016
725-777-3000

16

Case 2:20-bk-12402-MCW    Doc 229    Filed 08/20/21    Entered 08/20/21 15:19:01    Desc
Main Document    Page 20 of 23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 20, 2021, a copy of the:

**BLUE OX HOLDINGS, LLC'S EMERGENCY MOTION TO APPOINT CHAPTER 11 TRUSTEE**

was served by electronic notice sent to the e-mail address listed or by depositing a copy of the same in the U.S. mail, in a postage prepaid envelope, addressed to:

**VIA ELECTRONIC NOTIFICATION TO:**

Edward K. Bernatavicius
Office of the U.S. Trustee
230 North First Avenue, Se. 204
Phoenix, AZ 85003-1706
Edward.K.Bernatavicius@usdoj.gov

Taylor H. Allin
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
2720 East Camelback Road, Suite 210
Phoenix, AZ 85016
Taylor.allin@wilsonelser.com

Mark G. Ledwin
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
Mark.ledwin@wilsonelser.com

Thomas P. Salerno
Anthony J. Cali
Stinson LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
Thomas.salerno@stinson.com
Anthony.cali@stinson.com

Christopher H. Bayley
James G. Florentine
Molly J. Kjartanson
SNELL & WILMER LLP

1

One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004-2202
cbayley@swlaw.com
jflorentine@swlaw.com
mkjartanson@swlaw.com

John L. Condrey
Kira N. Barrett
GORDON REES SCULLY MANSUKHANI, LLP
Two N. Central Avenue Suite 2200
Phoenix, AZ 85004
jcondrey grsm.com
knbarrett grsm.com

Philip G. Mitchell
Gammage & Burnham PLC
40 North Central Avenue, 20th Floor
Phoenix, AZ 85004
pmitchell@gblaw.com

**VIA FIRST CLASS MAIL TO:**

Foley Bezek Behle Curtis LLP
15 W. Carrillo St.
Camarillo, CA 93010
Kimley Horn
7740 N. 16th Street, #300
Phoenix, AZ 85020

Loeb & Loeb
10100 Santa Monica Blvd., #2200
Los Angeles, CA 90067

Steve Miers
6000 South 56th Street
Lincoln, NE 68516

Courson Company
2882 Sand Hill Road #117
Menlo Park, CA 94025

California Department of Toxic
Substance Control
1001 I Street
Sacramento, CA 95815

2

1  Los Angeles County
   225 North Hill Street
2  Los Angeles, CA 90012

3
   Los Angeles County Treasurer and Tax Collector
4  Bankruptcy Unit
   PO Box 54110
5  Los Angeles, CA 90054-0110

6
   Hargis & Associates
7  9171 Towne Center Drive
   San Diego, CA 92122
8

9
        I declare under penalty of perjury under the laws of the State of Arizona that the
10 foregoing is true and correct.

11
                                                    */s/ Caitlin Halm*
12                                                  Caitlin Halm

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28