```
Christopher H. Bayley (#010764)
Steven D. Jerome (#018420)
James G. Florentine (#034058)
Molly J. Kjartanson (#034063)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ  85004-2202
Telephone:   (602) 382-6000
Email: cbayley@swlaw.com
       sjerome@swlaw.com
       jflorentine@swlaw.com
       mkjartanson@swlaw.com
Attorneys for Debtor
```

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SANTA CLARITA, LLC,<br><br>Debtor. | Proceedings Under Chapter 11<br><br>Case No. 2:20-bk-12402-MCW<br><br>**DEBTOR SANTA CLARITA, LLC AND SNELL & WILMER, L.L.P.'S OBJECTION TO TRUSTEE'S APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES** |

Debtor Santa Clarita, LLC[1] (the "Debtor") and Snell & Wilmer, L.L.P.[2] ("S&W") hereby submit this objection (the "Objection") to the *Trustee's Application for Compensation and Reimbursement of Expenses* filed on March 7, 2022 at DE No. 508 (the "Application") by Michael W. Carmel, Chapter 11 Trustee for the Debtor's bankruptcy estate (the "Trustee").  For the reasons set forth below, the Debtor and S&W respectfully request that this Court deny the Trustee's Application at this time.  The Debtor and S&W support this Objection with the following Memorandum of Points and Authorities.

---

[1] Acting solely in its capacity as Debtor but not debtor-in-possession.
[2] Acting as administrative claimant.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The Application cannot be approved at this time because it is premature. The Trustee is seeking an award of compensation based on events that have yet to occur. The Application sets forth two potential payment amounts based upon two potential future events—(1) the approval of the Sale Motion (defined below) and successful bid of Blue Ox at the Sale (defined below) or (2) RFI's performance under the RFI Settlement Agreement. Before fees may be awarded, one of the two events must first occur and then the Trustee must actually disburse funds to trigger an award of compensation under section 326. The Court cannot possibly determine the proper compensation under section 326 until the Trustee disburses funds. In light of the undeveloped factual record, it is unclear why the Trustee is seeking approval of compensation now especially when the resolution of the Bankruptcy Case is uncertain.[3] Although unstated, the Application must be requesting interim compensation.[4]

Even if the Application and requested relief is not premature, section 326 is not automatically applied, and the Court must first determine whether the fees sought are reasonable under section 330(a). The Application, however, fails to demonstrate that the fees are reasonable under section 330(a), and it fails to provide any detailed statement of the time expended and the services performed as required by Rule 2016(a). Because the Trustee has failed to meet his burden in establishing his entitlement to the fees requested, the Application cannot be approved.

Furthermore, the Trustee incorrectly relies on section 326 as the basis for awarding the fees sought. Section 326 can only be applied to "moneys disbursed" by the Trustee. Under either the RFI Settlement Agreement or the Blue Ox Settlement Agreement, the

---

[3]     As the Court is aware, a Chapter 11 bankruptcy case can only conclude in one of three ways: (i) dismissal, (ii) conversion, or (iii) confirmation of a plan of reorganization.
[4]     It appears the Trustee understands the import of filing fee applications for interim approval, as opposed to final approval, because the Trustee sought approval of the Interim Fee Applications (defined below) on an interim basis. As such, we assume that is the case here.

1

Trustee is not disbursing the amount of Blue Ox's Allowed Claim— let alone *any* amount. As a threshold matter, the Trustee is not entitled to an award of compensation under section 326.

For the reasons set forth below, the Application must be denied.

## I. FACTUAL BACKGROUND

1. On November 12, 2020, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

2. On September 22, 2021, the Court appointed Michael W. Carmel as the Chapter 11 Trustee. *See* DE No. 297.

3. Pursuant to the Court's *Order Granting Motion for Order Establishing Procedures for Compensation and Reimbursement of Professionals* entered on January 21, 2020 at DE No. 66 ("Interim Compensation Procedures Order"), S&W has filed nine (9) interim fee applications that seek interim approval and allowance of eighty percent (80%) of S&W's fees for legal services rendered and one hundred percent (100%) of expenses incurred, as well as authorization for S&W to apply the funds on deposit in the retainer to pay the approved fees and costs. *See* DE Nos. 71, 94, 120, 139, 154, 178, 199, 294, 355.

4. The Court has approved all nine (9) of S&W's interim fee applications, authorizing S&W to apply funds on deposit in the retainer, including any funds deposited into the retainer, if any, in the future, to pay eighty percent (80%) of S&W's legal fees and one hundred percent (100%) of costs. *See* DE Nos. 101, 124, 138, 158, 181, 198, 256, 313, 392.

5. As of February 14, 2022, S&W has applied the funds on deposit in the retainer to pay its fees and costs approved on an interim basis. *See* DE No. 469. The fees and costs paid on an interim basis from the funds on deposit in the retainer do not include twenty percent (20%) of S&W's fees (the "Holdback Fees") that S&W did not seek approval of through the interim fee applications. The Holdback Fees total $211,019.00 through the end of September 21, 2021.

### A. Blue Ox Settlement Agreement

6. On January 12, 2022, the Trustee filed a *Motion to Approve Settlement Agreement Regarding Claims of Blue Ox Holdings, LLC* at DE No. 400 ("Blue Ox Settlement Agreement").[5] The Blue Ox Settlement Agreement provides, among other things, for:

   a. Blue Ox, serving as the stalking horse bidder, may credit bid up to the amount of its Allowed Claim at that certain sale ("Sale") as set forth in the *Trustee's Motion For Orders (A) (I) Approving Bid Procedures Relating To Sale Of The Debtor's Assets; (II) Approving Bid Protections; (III) Scheduling A Hearing To Consider The Sale; (IV) Approving The Form And Manner Of Notice And Sale By Auction; And (V) Granting Related Relief; And (B) (I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Assets Of Debtor Outside The Ordinary Course Of Business; (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; And (III) Granting Related Relief* filed on March 3, 2022 at DE No. 497 (the "Sale Motion");

   b. Blue Ox will bid $7,500,000 in cash as follows:

      i. $6,000,000 to pay unpaid property taxes, with Blue Ox retaining the right to either assume the property tax liability or otherwise pay property taxes outside the bankruptcy estate and directly to Los Angeles County;

      ii. $1,500,000 to pay allowed administrative expenses, including only the fees due to the Chapter 11 Trustee and United States Trustee Office's quarterly fees, which will be paid to the estate at the time of closing;

   c. Blue Ox may contribute an additional $2,000,000 for the benefit of unsecured creditors if certain future events occur.

---

[5] All capitalized terms not defined herein shall have the same meaning as in the Blue Ox Settlement Agreement.

3

7. The Court entered an *Order Granting Trustee's Motion to Approve Settlement Agreement Regarding Claims of Blue Ox Holdings, LLC* on February 25, 2022 at DE No. 494, approving the Blue Ox Settlement Agreement subject to reservations within the Order and any modifications provided in the RFI Settlement Agreement.

**B.  RFI Settlement Agreement**

8. At the February 22, 2022 hearing, Blue Ox, Remediation Financial, Inc. ("RFI"), and Trustee recited the terms of the RFI Settlement Agreement on the record.

9. On March 18, 2022, Trustee filed a *Motion to Approve Settlement Agreement Between Remediation Financial, Inc., Blue Ox Holdings, LLC, and Trustee* at DE No. 530 ("RFI Settlement Agreement").[6] The RFI Settlement Agreement provides, among other things, for:

    a. RFI, or its nominee, is entitled to: (1) purchase all of Blue Ox's debts, claims, and liens against the Debtor, Debtor's Property, Bermite and Bermite's Property, by timely paying the Payoff Amount to Blue Ox; or (2) satisfy the Blue Ox Allowed Claim against Debtor in the amount of $232,500,000 and all claims that Blue Ox has against Bermite by paying the Payoff Amount to Blue Ox (collectively referred to as the "RFI Options");

    b. The transactions will be facilitated and closed with the assistance of a third-party commercial escrow agency or title company or by attorney trust account;

    c. RFI and Blue Ox will execute such documents and take such actions as may be required to complete the transaction elected by RFI;

    d. RFI, or its nominee, shall pay an additional $3,000,000 into the estate to be held and used to pay allowed administrative claims, with Trustee's fees being capped at $2,000,000.

---

[6] All capitalized terms not defined herein shall have the same meaning as in the RFI Settlement Agreement.

4

## C. Trustee's Fee Applications

10. Since his appointment, Trustee has filed four (4) interim fee applications (collectively, the "Interim Fee Applications") seeking interim approval and payment of fees and expenses for a total of $326,477.89. See, DE Nos. 330, 347, 376, 477.

11. The Court has approved the Trustee's Interim Fee Applications, authorizing payment of eighty percent (80%) of the administrative fees out of assets of the estate, on an interim basis. *See* DE Nos. 351, 374, 398, and 525. As of March 7, 2022, the Trustee has received payments for fees and expenses totaling $149,352.20.

12. Trustee filed the Application on March 7, 2022 at DE No. 508, requesting the Court grant the Application and approve payment to the Trustee for the amounts set forth therein. The Application sets forth, among other things, two different amounts based on two potential outcomes:

   a. $2,000,000, less any fees which have already been approved and paid, if: (a) the RFI Settlement Agreement is approved, and (b) RFI and/or the Debtor make a payment to Blue Ox in the amount of $225,000,000 by April 12, 2022; or

   b. $1,500,000, to be split with the United States Trustee's Office for quarterly fees,[7] if: (a) RFI and/or the Debtor does not make the payment to Blue Ox in the amount of $225,000,000 by April 12, 2022; and (b) Blue Ox succeeds with its credit bid at the auction.

## II. LEGAL ARGUMENT
### A. The Trustee's Application is Premature and Cannot be Approved at this Time

Section 326 states:

> In a case under chapter 7 or 11 . . . the ***court may allow reasonable compensation under section 330*** of this title of the trustee ***for the***

---

[7] The portion of the $1,500,000 that will be allocated to the United States Trustee's Office needs to be clearly stated and disclosed. The Application fails to do so. Although not expressly stated, the Trustee appears to be seeking compensation from the remainder of the $1,500,000 after payment of the United States Trustee's quarterly fees.

5

***trustee's services, payable after the trustee renders such services***, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, ***upon all moneys disbursed*** or turned over in the case ***by the trustee*** to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (emphasis added).

As section 326 demonstrates, compensation may be awarded *after* the trustee's services have been rendered and *after* the trustee has disbursed moneys. Only upon the performance of either the RFI Settlement Agreement or the Blue Ox Settlement Agreement and the related Sale will it be known what monies the Trustee actually disbursed. Until it is known what monies the Trustee has disbursed, the Court is unable to apply the formula set forth in section 326 and, thereby, conclusively determine the proper award of compensation. Moreover, the Application asks the Court to side-step the priority scheme set forth under section 507 of the Bankruptcy Code by guarantying that the Trustee will be compensated before other similarly situated administrative claimants and to the detriment of a potential chapter 7 trustee.[8]

Based on the foregoing, the Application is premature. The Debtor respectfully requests the Court deny the Application at this time and address the issue of the Trustee's compensation after either the performance under the RFI Settlement Agreement is complete or the consummation of the pending Sale.

**B.**   **Even if the Application is Not Premature, Section 326 is Not Automatically Applied and Compensation Must First be Reasonable Under Section 330**

The Trustee is not automatically entitled to the statutory maximum fees in section 326. As the Court noted at the September 15, 2021 hearing on Blue Ox's *Motion to Appoint*

---

[8] At set forth in *Whittaker Corporation's Demand for Adequate Protection* at DE No. 547, Whittaker correctly asserts that the allocation of proceeds under the Blue Ox Settlement Agreement and the Sale Motion to administrative claimants "without payment of proceeds to [junior] secured creditors is unlawful . . . ." *Whittaker Corporation's Demand for Adequate Protection* DE No. 547 at p. 3.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

*a Chapter 11 Trustee* and in the accompanying minute entry at DE No. 301, the appointed trustee would not automatically be entitled to the 3% ceiling in section 326, and that the appointed trustee must maintain appropriate time records for compensation on an hourly basis for review by the Court.

Section 326(a) provides that a court may allow reasonable compensation of the trustee for trustee's services based on a variable percentage "[u]pon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including the holders of secured claims." 11 U.S.C. § 326(a). The legislative intent of section 326 makes this explicitly clear:

> It must be emphasized that ***this section does not authorize compensation of trustees. This section simply fixes the maximum compensation of a trustee***. Proposed 11 U.S.C. 330 authorizes and fixes the standard of compensation. Under section 48c of current law, the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.

S. Rep. No. 95-989, 95th Cong., 2d. Sess. (1978) (emphasis added); *see* 3 Collier on Bankruptcy ¶ 330.02 (16th ed. 2021) ("The maximum compensation payable to trustees is set forth in section 326, although that section does not create a statutory entitlement to the maximum compensation.").

Section 330(a)(7), which incorporates section 326, specifies that the trustee's compensation as a commission is in furtherance of "determining the amount of reasonable compensation to be awarded to a trustee." 11 U.S.C. § 330(a)(7); s*ee In re Miniscribe Corp.*, 309 F.3d 1234, 1241 (10th Cir. 2002) ("Accordingly, a court awarding trustee fees must begin by assessing reasonableness under § 330(a) before applying the percentage-based cap under § 326(a)."); *see also* 3 Collier on Bankruptcy ¶ 330.02 (16th ed. 2021) ("[L]abeling the trustee's fee as a commission does not avoid the requirement that the court also determine that the fee is 'reasonable,' and does not alter the provisions in section 330(a) that limit a trustee to 'reasonable' compensation and that permit the court to

7

award less than the amount requested."). "The statutory maximum in section 326(a) comes into play only after the court determines a reasonable fee award according to the appropriate criteria. At that point, if a reasonable award would exceed the statutory limits, the trustee's fees must be reduced." *In re Roderick Timber, Co.*, 185 B.R. 601, 605 (B.A.P. 9th Cir. 1995) (citation omitted).

The Trustee fails to demonstrate in the Application that the fees sought are reasonable under section 330. Instead, the Trustee appears to exclusively rely on section 326 as the basis of awarding the fees. The Trustee cannot rely on section 326 alone and seek compensation beyond what has been demonstrated as reasonable. For this additional reason, the Application should be denied.

### C. Even if the Application is Not Premature, the Application Does Not Satisfy the Requirements of Section 330 and Rule 2016(a)

#### 1. The Application Fails to Demonstrate that the Fees Are Reasonable as Required by Section 330(a)

"As a general rule, allowance of trustee compensation is governed by sections 330 and 331." 3 Collier on Bankruptcy ¶ 326.02 (16th ed. 2021). Under section 330, a court may award the trustee "reasonable compensation for actual, necessary services rendered by such trustee . . . ." 11 U.S.C. § 330(a)(1)(A). "Section 330(a)(1) does not authorize courts to award 'reasonable compensation' *simpliciter,* but 'reasonable compensation *for actual, necessary services rendered by'* the § 327(a) professional." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 131 (2015) (emphasis in original) (holding time and expenses incurred in litigating fee applications is not compensable under section 330).

Moreover, section 330(a)(3) provides additional mandatory guidance in the case of a chapter 11 trustee, which requires the court to consider the nature, the extent, and the value of the trustee's services, while taking into account the following factors:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount

of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.330(

11 U.S.C. § 330(a)(3)(A)-(F). For chapter 11 trustees, the determination of whether a rational relationship exists between the amount of compensation and the type and level of services rendered necessarily requires the court's consideration of section 330(a)(3) factors. *In re Salgado-Nava*, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012) ("[I]f chapter 11 trustee fees are at issue, the bankruptcy court may be called upon in those cases to determine whether there exists a rational relationship between the amount of the commission and the type and level of services rendered. In the case of a chapter 11 trustee, this determination necessarily requires consideration of the § 330(a)(3) factors, and also ordinarily includes a lodestar analysis."). "The trustee has the burden of establishing that he or she is entitled to the fees requested." *In re Roderick Timber Co.*, 185 B.R. 601, 606 (B.A.P. 9th Cir. 1995) (citation omitted).

The Trustee failed to meet his burden in establishing he is entitled to the fees sought. The Trustee also failed to provide any detail to support the reasonableness of these fees pursuant to the factors set forth in section 330(a)(3)(A)–(F). Furthermore, the Trustee seeks compensation for future performed services based upon unknown future events; it is not based on *actual, necessary services* that have already been rendered. The Trustee has successfully applied for and received interim compensation in this Bankruptcy Case. As such, the Trustee should be aware of the requirements of Rule 2016 and section 330. Because the Application is wholly insufficient under the requirements of section 330(a), the Application must be denied.

   **2.    *The Application Fails to Provide Any Details Required by Rule 2016(a)***

Any entity seeking compensation for services, or for reimbursement of necessary expenses, from the estate "***shall*** file an application setting forth a detailed statement of: (1)

9

the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. ("Rule") 2016(a) (emphasis added). This requirement also applies to trustee's seeking compensation. *See* 9 Collier on Bankruptcy ¶ 2016.03 (16th ed. 2021) ("The rule [rule 2016] is clearly meant to cover all applicants seeking compensation pursuant to section 330 of the Code. This includes trustees and examiners, as well as persons employed pursuant to sections 327 and 1103 of the Bankruptcy Code."). "The requirement that the application contain a detailed statement of services rendered, time expended and expenses incurred gives to the court authority to ensure that the application is both comprehensive and detailed." Rule 2016(a) Advisory Committee's Note to 1987 Amendment (internal quotations omitted).

"Pursuant to Section 330 and Rule 2016, a trustee is required to maintain some form of time records which adequately demonstrate the time expended in performing services on behalf of the estate." *In re Roderick Timber Co.*, 185 B.R. 601, 607 (B.A.P. 9th Cir. 1995). In *Roderick Timber*, the chapter 7 trustee filed an application for interim fees but failed to provide detailed records to support the requested compensation. Without demonstrating the time expended as required by Rule 2016, the court held that "[t]he Application [was] inadequate such that interim fees should not have been awarded." *Id.* at 607. The court stated that "[t]the trustee has the burden of establishing that he or she is entitled to the fees requested." *Id.* at 606 (citation omitted). In explaining the court's role, the Bankruptcy Appellate Panel stated, "[a]s the fact finder, the court must evaluate the sufficiency of the evidence provided by the trustee in support of the fee application." *Id.*

The Trustee's Application does not satisfy an applicant's duty of providing a detailed statement pursuant to Rule 2016(a). The Application is neither comprehensive nor detailed. In fact, the Trustee fails to articulate the exact amount requested and fails to delineate the portion to be received by the United States Trustee's Office for quarterly fees. Moreover, the Trustee seeks a blanket approval of an award without any showing of the services rendered, time expended, and expenses incurred. As such, the Trustee has not met his burden of establishing he is entitled to these fees. Because the Application is wholly

insufficient under the requirements of Rule 2016(a), the Application must be denied.

### D. Section 326 Does Not Permit the Trustee to Receive the Statutory Maximum

Even if the Trustee satisfied Rule 2016 and section 330, the Trustee is not entitled to the statutory maximum. Section 326(a) provides that a court may allow reasonable compensation of the trustee for trustee's services based on a variable percentage "[u]pon all ***moneys disbursed*** or turned over in the case ***by the trustee*** to parties in interest, excluding the debtor, but including the holders of secured claims." 11 U.S.C. § 326(a) (emphasis added).

Thus, in order for reasonable compensation to be treated as a commission under section 326, there must be moneys disbursed by the Trustee. Under both the RFI Settlement Agreement and the Blue Ox Settlement Agreement, the Trustee is not disbursing the amount of Blue Ox's Allowed Claim and thus cannot receive compensation as a commission under section 326 based on that amount.

#### 1. Section 326 Does Not Permit the Trustee to Receive $2 Million Under the RFI Settlement Agreement

A trustee is only entitled to compensation as a commission under section 326 when the trustee distributes funds. 11 U.S.C. §326(a). "If a third party, such as a guarantor, pays a claim against the debtor in full using non-estate assets, the trustee is not entitled to any compensation based upon that payment. In such a case, nothing has been 'distributed' by the trustee because the payment by the third party simply substitutes one creditor for another." 3 Collier on Bankruptcy ¶ 326.02 (16th ed. 2021); *see also In re Cohoes Indus. Terminal, Inc.*, 103 B.R. 474, 478 (Bankr. S.D.N.Y. 1989) ("However, the . . . claim has not been distributed by the trustee because the payment by [wife of president and sole shareholder of corporate debtor] to [largest creditor] simply substituted one creditor for another. Therefore, this figure should not be counted for purposes of computing the trustee's maximum compensation."); *In re Music Merchandisers, Inc.*, 131 B.R. 377, 377 (Bankr. M.D. Tenn. 1991) ("The question presented is whether the Chapter 7 trustee is entitled to a commission on funds 'deemed' disbursed in a settlement with a claim holder. 11 U.S.C.

11

§ 326 does not allow the trustee a fee."); *In re Barnett*, 133 B.R. 487, 490 (Bankr. N.D. Iowa 1991) ("For the foregoing reasons, I conclude that 11 U.S.C. § 326(a) does not permit calculation of the trustee's maximum fee by considering the value of liens which are not paid by the trustee but which remain attached to the property interest transferred by the estate.").

Reframing compensation as a commission does not obviate the requirement that monies must be disbursed by the trustee for the trustee to be compensated under section 326(a). *See In re Palm Beach Resort Properties, Inc.*, 73 B.R. 323, 324 (Bankr. S.D. Fla. 1987). In *In re Palm Beach*, the trustee, who served as both the chapter 7 and chapter 11 trustee, sought compensation on the money paid by a purchaser to the secured creditor. *Id.* The trustee asserted that "the monies were paid as a result of the trustee's efforts in negotiating the sale." *Id.* (internal quotations omitted). At the same time, the trustee admitted that the money never passed through the trustee's account. *Id.* The court rejected the trustee's assertion because there was no actual or constructive disbursement by the trustee and, therefore, the trustee could not collect on the amount paid by the purchaser directly to the secured creditor. *Id.*

Neither of the RFI Options fall within section 326's requirement of "moneys disbursed by the trustee." The RFI Settlement Agreement contemplates two (2) options for RFI to satisfy Blue Ox's claim—(1) RFI, or its nominee, can purchase all of Blue Ox's debts, claims, and liens against the Debtor and Bermite or (2) RFI, or its nominee, can payoff Blue Ox's Allowed Claim. In both RFI Options, the transaction would be directly between RFI and Blue Ox, with no money (other than the $3,000,000 Administrative Deposit) passing through the bankruptcy estate or to be disbursed by the Trustee. *See* RFI Settlement Agreement, p. 4, § 3 ("The transaction contemplated by this Section 3 will be facilitated and closed with the assistance of a third-party commercial escrow agency or title company reasonably acceptable to the Parties or if no escrow agency is available by attorney trust account."). Moreover, under the RFI Options, RFI is a new entity standing in the shoes of the original claim holder Blue Ox. Any effort by the Trustee to assert that the

compensation is properly characterized as a commission based on his efforts in negotiating the RFI Settlement Agreement does not alter the requirements that monies must be disbursed by the Trustee in order for section 326(a) to apply. *See In re Palm Beach Resort*, 73 B.R. at 324.

Under the RFI Settlement Agreement, neither of the RFI Options trigger section 326. The Trustee cannot apply section 326 to the amount RFI pays to Blue Ox because the Trustee is not disbursing that money. As such, the Trustee is not entitled to $2,000,000 under the RFI Settlement Agreement.

### 2. Section 326 Does Not Permit the Trustee to Receive $1.5 Million Under the Blue Ox Settlement Agreement

The Blue Ox Settlement Agreement contemplates Blue Ox credit bidding up to the amount of its Allowed Claim with $1,500,000 to pay the Trustee's fees and the United States Trustee's Office quarterly fees. The Trustee's compensation under the Blue Ox Settlement Agreement in which Blue Ox credit bids is directly against the legislative intent of section 326 and Ninth Circuit case law.

The legislative intent of section 326 provides:

> It should be noted that the bases on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. ***It does not cover cases in which the trustee simply turns over the property to the secured creditor***, nor where the trustee abandons the property and the secured creditor is permitted to foreclose.

S. Rep. No. 95-989, 95th Cong., 2d. Sess. (1978) (emphasis added).

In evaluating a trustee's ability to recover under section 326, the Ninth Circuit held that "section 326(a) does not permit a trustee to collect fees on a credit bid transaction in which the trustee disbursed only property, not 'moneys,' to the creditor." *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015). In *Hokulani*, the secured creditor exercised its right to credit bid under section 363(k) and the trustee included the value of the credit bid in determining its compensation under section 326(a). *Id.* at 1085. The Ninth Circuit held credit bids cannot be used in determining a trustee's compensation because

13

"[i]n a credit bid transaction, the trustee turns property over to the creditor, and the creditor reduces the amount the estate owes him by the value of his bid. The only thing 'disbursed or turned over' by the trustee is the underlying property . . . ." *Id.* at 1086.

In discussing the legislative intent of section 326, the Ninth Circuit reasoned that "Congress elected to restrict the trustee's maximum compensation using the narrow term 'moneys,' as opposed to a broader term such as 'property' or 'assets,' and we must 'assume that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Id.* (citation omitted). It was further noted that, "[e]xcluding credit bids may have been meant to motivate trustees to seek out third party buyers and thus get better results for the estate. The legislators may have estimated that this benefit of excluding credit bids from trustees' fees outweighed any of the problems described above." *Id.* at 1088. When the case was before the Ninth Circuit Bankruptcy Appellate Panel, the court pointed out "[i]ndeed, the effect of adopting [the trustee's] interpretation of § 326(a) here is to compensate him for selling the Property to the Secured Creditors for no net return to the estate, with the payment of his enhanced fees from monies that would otherwise be distributed to unsecured creditors." *In re Hokulani Square, Inc.*, 460 B.R. 763, 775 (B.A.P. 9th Cir. 2011), *aff'd*, 776 F.3d 1083 (9th Cir. 2015).

Like the secured creditor in *Hokulani*, Blue Ox, as set forth in the Blue Ox Settlement Agreement, will be credit bidding up to the amount of its Allowed Claim, where the Trustee is merely turning over property and not "moneys." Furthermore, the result of the Blue Ox Settlement Agreement transaction provides minimal disbursement to unsecured creditors, with payment of the Trustee's enhanced fees that would otherwise be distributed to unsecured creditors. The Trustee is not liquidating property nor distributing proceeds; he is simply turning over the Debtor's Property to Blue Ox.

Because section 326 is clearly inapplicable to full credit bids, the Application cannot be approved to allow the Trustee to be compensated $1,500,000 under the Blue Ox Settlement Agreement.

14

## III. CONCLUSION

For the foregoing reasons, the Debtor and S&W respectfully request that this Court deny the Trustee's premature Application at this time and address the Trustee's compensation after the conclusion of either RFI Settlement Agreement or Blue Ox Settlement Agreement.

RESPECTFULLY SUBMITTED this 31st day of March, 2022.

SNELL & WILMER L.L.P.

By: /s/ Christopher H. Bayley
Christopher H. Bayley
Steven D. Jerome
James G. Florentine
Molly J. Kjartanson
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004-2202
Attorneys for Debtor Santa Clarita, LLC

COPY of the foregoing served
via ECF notice or U.S. Mail this
this 31st day of March, 2022, to:

| | |
|---|---|
| Edward K. Bernatavicius<br>United States Trustee<br>230 N 1st Ave, Suite 204<br>Phoenix, AZ 85003<br>Email: edward.k.bernatavicius@usdoj.gov | Mark G. Ledwin, Esq.<br>1133 Westchester Avenue<br>White Plains, New York 10604<br>Email: mark.ledwin@wilsonelser.com<br><br>Taylor H. Allin<br>WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP<br>2720 East Camelback Road, Suite 210<br>Phoenix, Arizona 85016<br>Email: taylor.allin@wilsonelser.com<br><br>*Attorneys for Steadfast Santa Clarita, LLC* |
| Teresa M. Pilatowicz, Esq.<br>Garman Turner Gordon LLP<br>2415 E. Camelback Rd., Suite 700<br>Phoenix, AZ 85016<br>Email: tpilatowicz@gtg.legal;<br>bknotices@gtg.legal<br><br>Gregory E. Garman, Esq.<br>Garman Turner Gordon LLP<br>7251 Amigo Street, Suite 210 | Thomas J. Salerno<br>Anthony P. Cali<br>STINSON LLP<br>1850 N. Central Avenue, Suite 2100<br>Phoenix, Arizona 85004-4584<br>thomas.salerno@stinson.com<br>anthony.cali@stinson.com<br><br>*Attorneys for Interested Party and Creditor Whittaker Corporation* |

| | |
|---|---|
| Las Vegas, Nevada 89119<br>Email: ggarman@gtg.legal;<br>bknotices@gtg.legal<br><br>*Attorneys for Creditor Blue Ox Holdings, LLC* | |
| John L. Condrey<br>Kira N. Barrett<br>GORDON REES SCULLY MANSUKHANI, LLP<br>Two N. Central Avenue Suite 2200<br>Phoenix, AZ 85004<br>jcondrey@grsm.com<br>knbarrett@grsm.com<br>*Attorneys for Parties in Interest Frederick J. Petersen & Mesch Clark Rothschild, P.C* | Tamalyn E. Lewis<br>Patrick A. Clisham<br>Engelman Berger, P.C.<br>2800 North Central Ave., Suite 1200<br>Phoenix, AZ 85012<br>tel@eblawyers.com<br>pac@eblawyers.com<br>*Attorneys for KB-2011, LLLP* |
| Richard J. Reynolds<br>Joseph P. Buchman<br>BURKE, WILLIAMS, & SORENSEN, LLP<br>444 S. Flower Street, Suite 2400<br>Los Angeles, CA 90071<br>rreynolds@bwslaw.com<br>jbuchman@bwswlaw.com<br>*Attorneys for the City of Santa Clarita* | Daniel G. Dowd<br>J. Neil Stuart<br>Kaysey L. Fung<br>COHEN DOWD QUIGLEY P.C.<br>2425 East Camelback Road, Suite 1100<br>Phoenix, Arizona 85016<br>ddowd@CDQLaw.com<br>nstuart@CDQLaw.com<br>kfung@CDQLaw.com<br>*Attorneys for Porta Bella Lender, L.L.C.* |
| Susan M. Freeman<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>201 E. Washington Street, Suite 1200<br>Phoenix, AZ 85004<br>SFreeman@LRRC.com<br>*Attorneys for Foley, Bezek, Behle & Curtis, LLP* | Sacks, Ricketts & Case LLP<br>2800 N. Central Ave., Suite 1910<br>Phoenix, AZ 85004<br>ssacks@srclaw.com |
| Los Angeles County Treasurer and Tax Collector<br>Bankruptcy Unit<br>PO Box 54110<br>Los Angeles, CA 90054-0110<br>bankruptcy@ttc.lacounty.gov | Steven P. McDonald<br>The McDonald Law Firm<br>1609 Soledad Ave.<br>La Jolla, CA 92037<br>smcdonald@themcdonaldlawfirm.com<br>*Attorney for Hargis + Associates, Inc.* |
| Allen Barnes & Jones, PLC<br>1850 N. Central Ave., Suite 1150<br>Phoenix, AZ 85004<br>tallen@allenbarneslaw.com | Allene and Robert Turpin<br>c/o Daniel G. Dowd<br>Cohen Dowd Quigley<br>2425 E. Camelback Rd, Suite 1100<br>Phoenix, AZ 85016-9207<br>ddowd@CDQLaw.com |

| | |
|---|---|
| California Department of Toxic Substance Control<br>PO Box 806<br>Sacramento, CA 95812-0806<br>Jose.Diaz@dtsc.ca.gov | Todd Burgess<br>Lindsi Weber<br>The Burgess Law Group<br>3131 E. Camelback Rd., Suite 224<br>Phoenix, AZ 85016<br>Todd@theburgesslawgroup.com<br>Lindsi@theburgesslawgroup.com<br>*Attorneys for Remediation Financial Inc.* |
| Christopher C. Simpson<br>Warren J. Stapleton<br>Osborn Maledon PA<br>2929 N Central Ave., 21st Floor<br>Phoenix, AZ 85012<br>csimpson@omlaw.com<br>wstapleton@omlaw.com<br>marita.erbeck@faegredrinker.com<br>*Attorneys for Prologis, L.P.* | Michael W. Carmel<br>Michael W. Carmel, Ltd.<br>80 East Columbus Ave.<br>Phoenix, AZ 85012<br>Michael@mcarmellaw.com<br>*Chapter 11 Trustee* |
| California Department of Toxic Substance Control<br>9211 Oakdale Ave.<br>Chatsworth, CA 91311 | Steve Miers<br>6000 South 56th Street<br>Lincoln, NE 68516<br>smiers6869@aol.com |
| Kimley Horn<br>7740 N. 16th Street, #300<br>Phoenix, AZ 85020 | Loeb & Loeb<br>10100 Santa Monica Blvd., #2200<br>Los Angeles, CA 90067 |
| AZ Department of Revenue<br>Bankruptcy Litigation<br>1600 W. Monroe, 7th Fl.<br>Phoenix, AZ 85007-2650 | GES Holdings, LLC<br>6040 E. Thomas Road<br>Scottsdale, AZ 85251-7508 |
| Courson Company<br>2882 Sand Hill Road, Unit 117<br>Menlo Park, CA 94025-7057 | Steadfast Insurance Company<br>1299 Zurich Way, 5th Fl.<br>Schaumburg, IL 60196-5870 |
| Stonehill Capital Management LLC<br>320 Park Ave., 26th Fl.<br>New York, NY 10022-6893 | Stonehill Master Fund Ltd.<br>885 Third Ave., 30th Fl.<br>New York, NY 10022-4834 |
| Zurich American Insurance Company<br>1299 Zurich Way, 5th Fl.<br>Schaumburg, IL 60196-1091 | Engineering/Remediation Group<br>4585 Pacheco Blvd., Suite 200<br>Martinez, CA 94553 |

/s/ Kathy Greene

17